# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| YETI Coolers, LLC, | Case No. 1:17-CV-01145 |
| Plaintiff, | COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR: |
| v. | |
| Wal-Mart Stores, Inc., | (1) BREACH OF CONTRACT; |
| Defendant. | (2) TRADEMARK DILUTION IN VIOLATION OF TEX. BUS. & COM. CODE § 16.103; |

(3) TRADE DRESS DILUTION IN VIOLATION OF TEX. BUS. & COM. CODE § 16.103;
(4) TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1114(1);
(5) TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125(a);
(6) TRADE DRESS INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125(a);
(7) TRADEMARK DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c);
(8) TRADE DRESS DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c);
(9) UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a);
(10) COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501
(11) PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271;
(12) COMMON LAW TRADEMARK INFRINGEMENT;
(13) COMMON LAW TRADE DRESS INFRINGEMENT;
(14) COMMON LAW UNFAIR COMPETITION;
(15) COMMON LAW MISAPPROPRIATION; AND
(16) UNJUST ENRICHMENT.

**Jury Trial Demanded**

## COMPLAINT

Plaintiff, YETI Coolers, LLC ("YETI"), for its complaint against Wal-Mart Stores, Inc. ("Wal-Mart") alleges as follows:

### The Parties

1.      YETI is a company organized and existing under the laws of the State of Delaware with a principal place of business at 7601 Southwest Parkway, Austin, TX 78735.

2.      Upon information and belief, Wal-Mart Stores, Inc. is a corporation organized under the laws of the State of Delaware with a principal place of business at 702 S.W. 8th Street, Bentonville, Arkansas, 72716, that does business under the name Walmart, including through the web site www.walmart.com.

### Jurisdiction and Venue

3.      This is an action for damages and injunctive relief for Wal-Mart's breach of contract of a settlement agreement entered into on March 10, 2017 by YETI and Wal-Mart (the "Settlement Agreement").   This action is also for trademark and trade dress infringement, trademark and trade dress dilution, unfair competition and false designation of origin, patent infringement, misappropriation, unjust enrichment, and copyright infringement.   This action arises under the Texas Business & Commerce Code, the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq*. ("the Lanham Act"), the Patent Act, 35 U.S.C. § 1, *et seq.,* federal common law, and state common law, including the law of Texas.

4.      This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367(a).

5.      This Court has personal jurisdiction over Wal-Mart because, *inter alia*, Wal-Mart agrees that jurisdiction for the enforcement of the Settlement Agreement is in the Western

District of Texas.  This Court also has personal jurisdiction over Wal-Mart because, *inter alia*, Wal-Mart is purposefully and intentionally availing itself of the privileges of doing business in the State of Texas, including in this District.  Among other things, (i) Wal-Mart operates multiple store locations in the State of Texas, including in this District, (ii) Wal-Mart has advertised, marketed, promoted, offered for sale, sold, and/or distributed, and continues to advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import, infringing products to customers and/or potential customers in the State of Texas, including in this District, (iii) Wal-Mart's tortious acts giving rise to this lawsuit and harm to YETI have occurred and are occurring in the State of Texas, including in this District, (iv) Wal-Mart has regularly and intentionally done business in this District and sold its infringing products in this District providing Wal-Mart with substantial infringing business revenue from this District, (v) Wal-Mart acted with knowledge that its unauthorized use of YETI's rights would cause harm to YETI in the State of Texas and in this District, (vi) Wal-Mart's customers and/or potential customers reside in the State of Texas, including in this District, and (vii) Wal-Mart benefits financially from the Texas market, including, for example, through sales of infringing products that ultimately occur in Texas, including in this District.  Wal-Mart has sold infringing products, including on or through its website at www.walmart.com, for distribution throughout Texas and this District, and has delivered infringing products into the stream of commerce to purchasers in Texas, including in this District.

6.      Venue is proper in this District pursuant to at least 28 U.S.C.  §§ 1391(a)-(d), federal law, and judicial doctrine.  In the alternative, venue is proper under 28 U.S.C. § 1400. Venue is also proper because this Court previously entered an Order of Dismissal in a prior litigation between YETI and Wal-Mart, Civil Action No. 1:16-cv-00454, and pursuant to that

Order and to YETI's and Wal-Mart's Settlement Agreement, venue is proper in this District for the purpose of enforcement of or the resolution of any dispute arising from YETI's and Wal-Mart's settlement or related to their Settlement Agreement.

### General Allegations – YETI's Business and Intellectual Property

7.      For years, YETI has engaged in the development, manufacture, and sale of insulated products, including insulated drinkware.  YETI created unique, distinctive, and non-functional designs to use with YETI's insulated drinkware.  YETI has extensively and continuously promoted and used these designs for years in the United States and in Texas. Through that extensive and continuous promotion and use, YETI's designs have become well-known indicators of the origin and quality of YETI's insulated drinkware products. YETI's designs also have acquired substantial secondary meaning in the marketplace and have become famous. As discussed in more detail below, YETI owns various rights rights relating to its insulated drinkware designs, including trademark rights, trade dress rights, patent rights, and copyrights.

8.      Several years ago, YETI introduced, amongst others, its 30 oz. Rambler® Tumbler, 20 oz. Rambler® Tumbler, and Rambler® Colster® Beverage Holder into the marketplace (collectively, "Rambler® Drinkware").  YETI has sold millions of the Rambler® Drinkware throughout the United States, including sales to customers in the State of Texas. YETI has invested significant resources in the design, development, manufacture, advertising, and marketing of the Rambler® Drinkware.  The designs and features of the Rambler® Drinkware have received widespread and unsolicited public attention.  For example, the Rambler® Drinkware have been featured in numerous newspaper, magazine, and Internet articles.

9.     The designs of the Rambler® Drinkware have distinctive and non-functional features that identify to consumers that the origin of the Rambler® Drinkware is YETI.  As a result of at least YETI's continuous and exclusive use of the Rambler® Drinkware, YETI's marketing, advertising, and sales of the Rambler® Drinkware, and the highly valuable goodwill and substantial secondary meaning acquired as a result, YETI owns trade dress rights in the designs and appearances of the Rambler® Drinkware, which consumers have come to uniquely associate with YETI.  YETI's trade dress rights in the designs and appearances of the Rambler® Drinkware are collectively referred to as "YETI's Trade Dress."

10.     Exemplary images of a YETI 30 oz. Rambler® Tumbler are shown below:

**Illustration 1:  Exemplary Images of a YETI 30 oz. Rambler® Tumbler.**



11.     YETI has trade dress rights in the overall look, design, and appearance of the YETI 30 oz. Rambler® Tumbler, which includes the design and appearance of the curves, tapers, and lines in the YETI 30 oz. Rambler® Tumbler; the design and appearance of the profile of the YETI 30 oz. Rambler® Tumbler; the design and appearance of the walls of the YETI 30 oz.

Rambler® Tumbler; the design and appearance of the rim of the YETI 30 oz. Rambler® Tumbler; the design, appearance, and placement of the taper in the side wall of the YETI 30 oz. Rambler® Tumbler; the design, appearance, and placement of the upper portion, mid portion, and bottom portion of the side wall of the YETI 30 oz. Rambler® Tumbler; the design, appearance, and placement of the style line around the base of the YETI 30 oz. Rambler® Tumbler; the design, appearance, and placement of the tab on the lid of the YETI 30 oz. Rambler® Tumbler; the design, appearance, and placement of the drinking opening on the lid of the YETI 30 oz. Rambler® Tumbler; the design, appearance, and placement of the top plane of the lid of the YETI 30 oz. Rambler® Tumbler; the design, appearance, and placement of the side walls of the lid of the YETI 30 oz. Rambler® Tumbler; the color contrast and color combinations of the YETI 30 oz. Rambler® Tumbler and the tumbler lid of the YETI 30 oz. Rambler® Tumbler; and the relationship of these features to each other and to other features.

12.     Exemplary images of a YETI 20 oz. Rambler® Tumbler are shown below:



Illustration 2:  Exemplary Images of a YETI 20 oz. Rambler® Tumbler.

13.    YETI has trade dress rights in the overall look, design, and appearance of the YETI 20 oz. Rambler® Tumbler, which includes the design and appearance of the curves, tapers, and lines in the YETI 20 oz. Rambler® Tumbler; the design and appearance of the profile of the YETI 20 oz. Rambler® Tumbler; the design and appearance of the walls of the YETI 20 oz. Rambler® Tumbler; the design and appearance of the rim of the YETI 20 oz. Rambler® Tumbler; the design, appearance, and placement of the taper in the side wall of the YETI 20 oz. Rambler® Tumbler; the design, appearance, and placement of the style line around the base of the YETI 20 oz. Rambler® Tumbler; the design, appearance, and placement of the tab on the lid of the YETI 20 oz. Rambler® Tumbler; the design, appearance, and placement of the drinking opening on the lid of the YETI 20 oz. Rambler® Tumbler; the design, appearance, and placement of the top plane of the lid of the YETI 20 oz. Rambler® Tumbler; the design, appearance, and placement of the side walls of the lid of the YETI 20 oz. Rambler® Tumbler; the color contrast and color combinations of the YETI 20 oz. Rambler® Tumbler and the

tumbler lid of the YETI 20 oz. Rambler® Tumbler; and the relationship of these features to each other and to other features.

14.    Exemplary images of a YETI Rambler® Colster® Beverage Holder are shown below:

| Illustration 3:  Exemplary Images of a YETI Rambler® Colster® Beverage Holder. |
| --- |



15.    YETI has trade dress rights in the overall look, design, and appearance of the YETI Rambler® Colster® Beverage Holder, which includes the design and appearance of the curves and lines in the YETI Rambler® Colster® Beverage Holder; the design and appearance of the profile of the YETI Rambler® Colster® Beverage Holder; the design and appearance of the walls of the YETI Rambler® Colster® Beverage Holder; the design and appearance of the rim of the YETI Rambler® Colster® Beverage Holder; the design, appearance, and placement of the top plane of the upper band of the YETI Rambler® Colster® Beverage Holder; the design, appearance, and placement of the side walls of the upper band of the YETI Rambler® Colster® Beverage Holder; the design, appearance, and placement of the style line around the base of the YETI Rambler® Colster® Beverage Holder; the color contrast and color combinations of the

YETI Rambler® Colster® Beverage Holder and the upper band of the YETI Rambler® Colster® Beverage Holder; and the relationship of these features to each other and to other features.

16.     As a result of YETI's substantially exclusive and continuous use, advertising, and sales of insulated drinkware products bearing YETI's Trade Dress, and the publicity and attention that has been paid to YETI's Trade Dress, YETI's Trade Dress has become famous and has acquired valuable goodwill and substantial secondary meaning in the marketplace, as consumers have come to uniquely associate YETI's Trade Dress as source identifiers of YETI.

17.     YETI has also used the trademark "YETI" throughout the United States and the state of Texas in connection with its insulated drinkware products, cooler products, and other products, and the trademarks "RAMBLER," "YETI COLSTER," and "YETI RAMBLER COLSTER" throughout the United States and the state of Texas in connection with at least its insulated drinkware products.  YETI has used these trademarks throughout the United States and the State of Texas, including with advertising and promoting YETI's Rambler® Drinkware. YETI has sold millions of units of the Rambler® Drinkware bearing the "YETI," "RAMBLER," "YETI COLSTER," and "YETI RAMBLER COLSTER" trademarks throughout the United States.

18.     In view of YETI's extensive and continuous use of "YETI," "RAMBLER," "YETI COLSTER," and "YETI RAMBLER COLSTER," consumers have come to associate "YETI," "RAMBLER," "YETI COLSTER," and "YETI RAMBLER COLSTER" as source identifiers of YETI, and YETI owns trademark rights in the marks.  Further, YETI owns several trademark registrations, including:

      i.     Trademark Registration No. 3,203,869 ("the '869 Registration") for "YETI" for portable coolers;

9

ii.      Trademark Registration No. 4,948,370 ("the '370 Registration") for "YETI" for clothing;

iii.     Trademark Registration No. 4,948,371 ("the '371 Registration") for "YETI" for clothing;

iv.     Trademark Registration No. 4,833,419 ("the '419 Registration") for "YETI COLSTER" for stainless steel drink holders;

v.      Trademark Registration No. 5,233,441 ("the '441 Registration") for "RAMBLER" for beverageware, cups, drinking glasses, tumblers for use as drinking vessels, jugs, mugs, temperature-retaining drinking vessels, storage containers for household or domestic use, namely, vacuum container for hot or cold food and drink, beer growlers, insulated food and drink containers, stainless steel tumblers for use as drinking vessels, stainless steel drinking glasses, stainless steel beverageware, drinking straws; and

vi.     Trademark Registration No. 4,871,725 ("the '725 Registration") for "YETI RAMBLER COLSTER" for stainless steel drink holders.

19.    Collectively, these trademarks are referred to as "YETI's Trademarks." Copies of the trademark registrations are attached as Exhibits 1-6.

20.    As a result of, *inter alia*, YETI's exclusive, continuous, and substantial use of "YETI," "RAMBLER," "YETI COLSTER," and "YETI RAMBLER COLSTER," YETI's exclusive, continuous, and substantial advertising and promoting of products bearing "YETI," "RAMBLER," "YETI COLSTER," and "YETI RAMBLER COLSTER," and the publicity and attention that has been paid to YETI's "YETI," "RAMBLER," "YETI COLSTER," and "YETI

RAMBLER COLSTER" marks, these marks have become famous in the United States, including in the State of Texas, and have acquired valuable goodwill and substantial secondary meaning in the marketplace, as consumers have come to uniquely associate YETI's "YETI," "RAMBLER," "YETI COLSTER," and "YETI RAMBLER COLSTER" trademarks as source identifiers of YETI.

21. YETI also owns U.S. Design Patent No. D752,397 ("the '397 patent") related to a beverage holder. The '397 patent is entitled "Beverage Holder." On March 29, 2016, the '397 patent was duly and legally issued by the U.S. Patent Office to YETI. YETI owns the entire right, title, and interest to the '397 patent. A copy of the '397 patent is attached as Exhibit 7. An exemplary figure from the '397 patent is shown in Illustration 4 below.

| Illustration 4:  Exemplary Figure from the '397 Patent. |
| --- |



22. YETI also owns several copyrights related to its Rambler® Drinkware products. The U.S. Copyright Office registered these copyrights as follows:

i.  Copyright Registration No. VA 1-974-722 ("the '722 Registration");

ii. Copyright Registration No. VA 1-974-730 ("the '730 Registration");

iii.    Copyright Registration No. VA 1-974-735 ("the '735 Registration");

iv.    Copyright Registration No. VA 1-974-732 ("the '732 Registration"); and

v.    Copyright Registration No. VA 2-074-727 ("the '727 Registration").

23.    Collectively, these copyrights are referred to as "YETI's Copyrights." Copies of the copyright certificates are attached as Exhibits 8-12.

24.    The '722 Registration is entitled "YETI Rambler Colster Label."  The '722 Registration certificate was duly and legally issued by the U.S. Copyright Office to YETI on October 7, 2015.  YETI owns the entire right, title, and interest to the YETI Rambler Colster Label copyright.  A copy of the '722 Registration certificate is attached as Exhibit 8 and the corresponding label is shown in Illustration 5 below.

**Illustration 5: YETI Rambler Colster Label for the '722 Registration.**



25.    The '730 Registration is entitled "YETI Rambler 10 oz. Lowball Label."  The '730 Registration certificate was duly and legally issued by the U.S. Copyright Office to YETI on October 7, 2015.  YETI owns the entire right, title, and interest to the YETI Rambler 10 oz. Lowball Label copyright.  A copy of the '730 Registration certificate is attached as Exhibit 9 and the corresponding label is shown in Illustration 6 below.

| Illustration 6: YETI Rambler 10 oz. Lowball Label for the '730 Registration. |
| --- |



26.     The '735 Registration is entitled "YETI 30 oz. Rambler Tumbler Label."  The
'735 Registration certificate was duly and legally issued by the U.S. Copyright Office to YETI
on October 7, 2015.  YETI owns the entire right, title, and interest to the YETI 30 oz. Rambler
Tumbler Label copyright.  A copy of the '735 Registration certificate is attached as Exhibit 10
and the corresponding label is shown in Illustration 7 below.

| Illustration 7: YETI 30 oz. Rambler Tumbler Label for the '735 Registration. |
| --- |



27.     The '732 Registration is entitled "YETI 20 oz. Rambler Tumbler Label."  The
'732 Registration certificate was duly and legally issued by the U.S. Copyright Office to YETI
on October 7, 2015.  YETI owns the entire right, title, and interest to the YETI 20 oz. Rambler
Tumbler Label copyright.  A copy of the '732 Registration certificate is attached as Exhibit 11
and the corresponding label is shown in Illustration 8 below.

| Illustration 8: YETI 20 oz. Rambler Tumbler Label for the '732 Registration. |
| --- |



28.     The '727 Registration is entitled "YETI 36 oz. Rambler Bottle Label." The '727 Registration certificate was duly and legally issued by the U.S. Copyright Office to YETI on September 27, 2017. YETI owns the entire right, title, and interest to the YETI 36 oz. Rambler Bottle Label copyright. A copy of the '727 Registration certificate is attached as Exhibit 12 and the corresponding label is shown in Illustration 9 below.

**Illustration 9: YETI 36 oz. Rambler Bottle Label for the '727 Registration.**



## General Allegations – Wal-Mart's Unlawful Activities

29.     Wal-Mart has purposefully advertised, promoted, offered for sale, sold, distributed, manufactured and/or imported, and continues to advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import drinkware products, that violate YETI's rights, including the rights protected by YETI's Trade Dress, YETI's Trademarks, YETI's Copyrights, and the '397 patent. On information and belief, Wal-Mart also is making or having made and/or importing the infringing products into the United States. Wal-Mart's infringing products are confusingly similar imitations of YETI's products and are in the same size as YETI's products. Wal-Mart's actions have all been without the authorization of YETI.

30.     Illustrations 10-13 below show examples of Wal-Mart's infringing products.

**Illustration 10:  Exemplary Image of Wal-Mart's "Koozie" Infringing Product.**



**Illustration 11:  Exemplary Image of Wal-Mart's 30 oz. Infringing Product.**



**Illustration 12:  Exemplary Image of Wal-Mart's 20 oz. Infringing Product.**



31.     As a result of Wal-Mart's activities related to the infringing products, there is a strong likelihood of confusion between Wal-Mart and its products on the one hand, and YETI and its products on the other hand.

32.     YETI used YETI's Trade Dress and Copyrights extensively and continuously before Wal-Mart began advertising, promoting, selling, offering to sell, distributing, manufacturing, and/or importing its infringing products.  Moreover, YETI's Trade Dress became famous and acquired secondary meaning in the United States and in the State of Texas generally and in geographic areas in Texas before Wal-Mart commenced unlawful use of YETI's Trade Dress.

33.     On April 8, 2016, YETI filed a complaint against Wal-Mart regarding Wal-Mart's infringing products.  YETI and Wal-Mart settled the dispute by entering into the Settlement Agreement on March 10, 2017.  This Court entered a Stipulated Order of Dismissal in that prior suit pursuant to the Settlement Agreement.  Order, YETI Coolers, LLC v. Wal-Mart Stores, Inc., No. 1:160-cv-454-RP (W.D. Tex. June 14, 2017), ECF No. 49.  Despite Wal-Mart's clear and express obligations under the Settlement Agreement with regard to the "Accused Products" identified in the Settlement Agreement, Wal-Mart continues to unlawfully advertise, market, promote, sell, offer to sell, and/or distribute Accused Products, and take other actions, in breach of the Settlement Agreement and in violation of YETI's rights.

34.     Illustrations 13-17 below show examples of Wal-Mart's continued advertisement, marketing, promotion, and offers for sale of the Accused Products and infringing products in breach of the Settlement Agreement and in violation of YETI's rights:

**Illustration 13:  Exemplary Image of Wal-Mart Accused Product Called "YETI Black Stainless Steel Tumbler"**

**Illustration 14:  Exemplary Image of  Wal-Mart Accused Product Called "Stainless Steel Tumbler Vacuum Insulated Water Cup"**



| Illustration 15:  Exemplary Image of  Wal-Mart Accused Product Called "Steel 700ml Cups Cooler Rambler Tumbler" |
|---|
|  |

| Illustration 16:  Exemplary Image of Wal-Mart Accused Product Called "2Pcs Handle for Ozark Trail 30-Ounce Tumbler, Yeti Rambler 30 oz." |
|---|
|  |

**Illustration 17:  Exemplary Image of Wal-Mart Accused Product Called "Oak Leaf 3 Pcs Spill Proof and Splash Resistant Lid for Ozark Trail 20 Ounce Tumbler, Yeti Rambler 20 oz."**



35.     In addition to infringing and diluting YETI's Trade Dress, Wal-Mart has also unlawfully used and continues to unlawfully use YETI's Trademarks, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, in *inter alia*, advertising, promoting, offering to sell, selling, distributing, manufacturing, and/or importing the infringing products and/or labels, and is thereby infringing and diluting YETI's Trademarks and intentionally trading on YETI's goodwill.

36.     As a result of Wal-Mart's activities related to use of YETI's Trademarks, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, there is a likelihood of confusion between Wal-Mart and Wal-Mart's products on the one hand, and YETI and YETI's products on the other hand.

37.     YETI used its Trademarks and Copyrights extensively and continuously before Wal-Mart began advertising, promoting, selling, offering to sell, distributing, manufacturing, and/or importing into the United States the infringing products. Moreover, YETI's Trademarks

became famous and acquired secondary meaning in the United States and in the State of Texas before Wal-Mart commenced unlawful use of YETI's Trademarks.

38.     Illustrations 18 and 19 below show exemplary images of Wal-Mart's unlawful use of YETI's Trade Dress, YETI's Trademarks, and YETI's Copyrights, including through the use of counterfeit products:

| Illustration 18: Exemplary Images of Wal-Mart's Counterfeit 20 oz. Tumbler Product. | Illustration 19: Exemplary Images of YETI's 20 oz. Rambler® Tumbler. |
| --- | --- |



| Illustration 18: Exemplary Images of Wal-Mart's Counterfeit 20 oz. Tumbler Product. | Illustration 19: Exemplary Images of YETI's 20 oz. Rambler® Tumbler. |
| --- | --- |



| Illustration 18: Exemplary Images of Wal-Mart's Counterfeit 20 oz. Tumbler Product. | Illustration 19: Exemplary Images of YETI's 20 oz. Rambler® Tumbler. |
|---|---|



39.    As a result of Wal-Mart's activities related to use of YETI's Trade Dress, YETI's Trademarks, and YETI's Copyrights, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, there is a likelihood of confusion between Wal-Mart and Wal-Mart's products on the one hand, and YETI and YETI's products on the other hand.

40.    Wal-Mart has also engaged in, and continues to engage in, false advertising of unlicensed and counterfeit products, including insulated beverage containers, components, labels, and packaging materials thereof.  Wal-Mart's false advertising through the use of false designation of origin, false or misleading description of fact, and/or false or misleading representation of fact, which were used in commercial advertising or promotion, which misrepresents the nature, characteristics, and qualities of goods resulted in and continues to result in a false or misleading article being sold.

41.    Wal-Mart's use of YETI's Trade Dress, YETI's Trademarks, and YETI's Copyrights, including through counterfeits, reproductions, copies, and/or colorable imitations thereof has been intentional, willful, and malicious.  Wal-Mart's bad faith is evidenced at least

by Wal-Mart's breach of the Settlement Agreement, direct copying of YETI's products, and unlawful use of YETI's Trade Dress and YETI's Trademarks.

42.     Under Section C.3 of the Settlement Agreement, Wal-Mart explicitly agreed to provide YETI with specific notices, confirmations and validations by no later than November 15, 2017.  Wal-Mart failed to provide these Notices confirmation and validations by November 15 and continues to fail to provide them despite repeat requests from YETI.

43.     As discussed above and as set forth in the counts below, Wal-Mart's actions are unfair and unlawful.

## Count I:
## Breach of the Settlement Agreement

44.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 43 as though fully set forth herein.

45.     The Settlement Agreement entered into between YETI and Wal-Mart created a valid and enforceable contract between the parties.

46.     YETI has fulfilled its obligations and satisfied all conditions precedent under the Settlement Agreement, including agreeing to dismiss YETI's prior pending lawsuit against Wal-Mart.

47.     Wal-Mart's continued advertisement, marketing, promotion, offers for sale, sales, and/or distribution of the Accused Products and infringing products constitutes a failure to perform expressed obligations under the Settlement Agreement, and is therefore a breach of at least Sections C.1, C.2, C.3, C.4, and C.5 of the Settlement Agreement.

48.     Walmart also failed to provide and continues to fail to provide the notices, confirmation and validations that Wal-Mart agreed to provide in Section C.3 of the Settlement

Agreement. These failures constitute failures to perform expressed obligations under the Settlement Agreement.

49.     YETI has been injured and has lost one or more sales as a direct result of Wal-Mart's breach of the Settlement Agreement, and will continue to be injured, lose sales, and suffer irreparable harm to its business, business reputation and intellectual property rights.

### Count II:
### Trademark Dilution Under Tex. Bus. & Com. Code § 16.103

50.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

51.     Based on the activities described above, including, for example, Wal-Mart's use of YETI's Trademarks, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, Wal-Mart is likely to dilute, has diluted, and continues to dilute YETI's Trademarks in violation of § 16.103 of the Texas Business & Commerce Code. Wal-Mart's use of YETI's Trademarks, including through counterfeits, reproductions, copies, and/or colorable imitations thereof is likely to cause, and has caused, dilution of YETI's famous trademarks at least by eroding the public's exclusive identification of YETI's Trademarks with YETI, by lessening the capacity of YETI's famous trademarks to identify and distinguish YETI's products, by associating YETI's Trade Dress with products of inferior quality, and by impairing the distinctness of YETI's famous trademarks.

52.     YETI's Trademarks are famous and are entitled to protection under Texas law. YETI has extensively and continuously promoted and used its trademarks in the United States and in the State of Texas. Through that extensive and continuous use, YETI's Trademarks have become famous and well-known indicators of the origin and quality of YETI's products in the United States and in the State of Texas and in geographic areas in Texas, and YETI's

Trademarks are widely recognized by the public throughout Texas and in geographic areas in Texas as a designation of the source of YETI and YETI's products.  YETI's Trademarks have also acquired substantial secondary meaning in the marketplace, including in the State of Texas and in geographic areas in Texas.  Moreover, YETI's Trademarks became famous and acquired this secondary meaning before Wal-Mart commenced their unlawful use of YETI's Trademarks in connection with the Accused Products and infringing products.

53.     Wal-Mart's use of YETI's Trademarks, including through counterfeits, reproductions, copies, and/or colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's Trademarks, YETI's products, and YETI.

54.     On information and belief, Wal-Mart's use of YETI's Trademarks, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, has been intentional, willful, and malicious.  Wal-Mart's bad faith is evidenced at least by Wal-Mart's unlawful use of YETI's Trademarks to sell the Accused Products and infringing products, and by Wal-Mart's continuing disregard for YETI's rights.

55.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Wal-Mart's profits, YETI's actual damages, enhanced profits and damages, and reasonable attorney fees under at least Tex. Bus. & Com. Code § 16.104.

## Count III:
## Trade Dress Dilution Under Tex. Bus. & Com. Code § 16.103

56.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 55 as though fully set forth herein.

57.     Based on the activities described above, including, for example, Wal-Mart's advertising, promoting, offering to sell, selling, distributing, manufacturing, and/or importing the Accused Products and infringing products, Wal-Mart is likely to dilute, have diluted, and continue to dilute YETI's Trade Dress in violation of § 16.103 of the Texas Business & Commerce Code.   Wal-Mart's use of YETI's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, is likely to cause, and has caused, dilution of YETI's famous trade dress at least by eroding the public's exclusive identification of YETI's famous trade dress with YETI, by lessening the capacity of YETI's famous trade dress to identify and distinguish YETI's products, by associating YETI's trade dress with products of inferior quality, and by impairing the distinctiveness of YETI's famous trade dress.

58.     YETI's trade dress is famous and is entitled to protection under Texas law. YETI's Trade Dress includes unique, distinctive, and non-functional designs.   YETI has extensively and continuously promoted and used its trade dress in the United States and in the State of Texas.   Through that extensive and continuous use, YETI's Trade Dress has become famous and well-known indicators of the origin and quality of YETI's products in the United States and in the State of Texas generally and in geographic areas in Texas, and YETI's Trade Dress is widely recognized by the public throughout Texas and in geographic areas in Texas as designations of the source of YETI and YETI's products.   YETI's Trade Dress also has acquired substantial secondary meaning in the marketplace, including in the State of Texas and in geographic areas in Texas.   Moreover, YETI's Trade Dress became famous and acquired this secondary meaning before Wal-Mart commenced its unlawful use of YETI's Trade Dress in connection with the Accused Products and infringing products.

59.     Wal-Mart's use of YETI's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's Trade Dress with YETI and YETI's drinkware products.

60.     On information and belief, Wal-Mart's use of YETI's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof has been intentional, willful, and malicious.  Wal-Mart's bad faith is evidenced at least by the similarity of the Accused Products and infringing products to YETI's Trade Dress, as demonstrated in, for example, Illustrations 1-3 and Illustrations 10-19 above, and by Wal-Mart's continuing disregard for YETI's rights.

61.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Wal-Mart's profits, actual damages, enhanced profits and damages, and reasonable attorney fees under at least Tex. Bus. & Com. Code § 16.104.

## Count IV:
## Trademark Infringement under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)

62.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 61 as though fully set forth herein.

63.     Based on the activities described above, including, for example, Wal-Mart using YETI's federally registered trademarks, including at least the trademarks protected by the '869 Registration, the '370 Registration, the '371 Registration, the '419 Registration, the '441 Registration, and the '725 Registration, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, in connection with advertising, promoting, offering for sale, selling, distributing, manufacturing, and/or importing the Accused Products and infringing

products, Wal-Mart has infringed YETI's registered trademarks under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). Wal-Mart's use of YETI's Trademarks, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, is likely to cause confusion, or to cause mistake, or to deceive.

64.    Wal-Mart's use of YETI's Trademarks, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's Trademarks, YETI's products, and YETI.

65.    On information and belief, Wal-Mart's use of YETI's Trademarks, through counterfeits, reproductions, copies, and/or colorable imitations thereof, has been intentional, willful, and malicious. Wal-Mart's bad faith is evidenced at least by its unlawful use of YETI's Trademarks in an effort to sell the Accused Products and infringing products, and by Wal-Mart's continuing disregard for YETI's rights.

66.    YETI is entitled to injunctive relief, and YETI is entitled to recover at least Wal-Mart's profits, YETI's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1114(1), 1116, and 1117.

**Count V:**
**Trademark Infringement Under § 43(a) of the Lanham Act, 15 § U.S.C. 1125(a)**

67.    YETI realleges and incorporates the allegations set forth in paragraphs 1 through 66 as though fully set forth herein.

68.    Based on the activities described above, including, for example, Wal-Mart's use of YETI's Trademarks, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, Wal-Mart violates § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Wal-

Mart's use of YETI's Trademark, including through counterfeits, reproductions, copies, and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Wal-Mart with YETI and as to the origin, sponsorship, and/or approval of the Accused Products and infringing products, at least by creating the false and misleading impression that the Accused Products and infringing products are manufactured by, authorized by, or otherwise associated with YETI.

69. YETI's Trademarks are entitled to protection under the Lanham Act. YETI's Trademarks are inherently distinctive. YETI has extensively and continuously promoted and used its trademarks in the United States. Through that extensive and continuous use, YETI's Trademarks have become well-known indicators of the origin and quality of YETI's products. YETI's Trademarks have also acquired substantial secondary meaning in the marketplace. Moreover, YETI's Trademarks acquired this secondary meaning before Wal-Mart commenced their unlawful use of YETI's Trademarks in connection with the Accused Products and infringing products.

70. Wal-Mart's use of YETI's Trademarks, including through counterfeits, reproductions, copies, and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's Trademarks, YETI's products, and YETI.

71. On information and belief, Wal-Mart's use of YETI's Trademarks, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, has been intentional, willful, and malicious. Wal-Mart's bad faith is evidenced at least by Wal-Mart's

unlawful use of YETI's Trademarks to sell the Accused Products and infringing products and by Wal-Mart's continuing disregard for YETI's rights.

72.     YETI is entitled to injunctive relief, and YETI is entitled to recover at least Wal-Mart's profits, YETI's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

### Count VI:
### Trade Dress Infringement Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

73.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 72 as though fully set forth herein.

74.     Wal-Mart's advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Accused Products and infringing products violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) by infringing YETI's Trade Dress.  Wal-Mart's use of YETI's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Wal-Mart with YETI and as to the origin, sponsorship, and/or approval of the Accused Products and infringing products, at least by creating the false and misleading impression that the Accused Products and infringing products are manufactured by, authorized by, or otherwise associated with YETI.

75.     YETI's Trade Dress is entitled to protection under the Lanham Act.  YETI's Trade Dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used its trade dress in the United States.  Through that extensive and continuous use, YETI's Trade Dress has become a well-known indicator of the origin and quality of YETI's products.  YETI's Trade Dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's Trade Dress acquired this secondary meaning before Wal-Mart

commenced its unlawful use of YETI's Trade Dress in connection with the Accused Products and infringing products.

76.     Wal-Mart's use of YETI's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's Trade Dress, with YETI, and YETI's drinkware products.

77.     On information and belief, Wal-Mart's use of YETI's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, has been intentional, willful, and malicious.  Wal-Mart's bad faith is evidenced at least by the similarity of the Accused Products and infringing products to YETI's Trade Dress, as demonstrated in, for example, Illustrations 1-3 and Illustrations 10-19 above, and by Wal-Mart's continuing disregard for YETI's rights.

78.     YETI is entitled to injunctive relief, and YETI is entitled to recover at least Wal-Mart's profits, YETI's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

## Count VII:
## Trademark Dilution under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)

79.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 78 as though fully set forth herein.

80.     Based on the activities described above, including, for example, Wal-Mart's use of YETI's Trademarks, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, Wal-Mart is likely to dilute, has diluted, and continues to dilute YETI's famous trademarks in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).  Wal-Mart's

use of YETI's Trademarks, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, is likely to cause, and has caused, dilution of YETI's famous trademarks at least by eroding the public's exclusive identification of YETI's famous trademarks with YETI and YETI's products, by lessening the capacity of YETI's famous trademarks to identify and distinguish YETI's products, by associating YETI's Trademarks with products of inferior quality, and by impairing the distinctiveness of YETI's famous trademarks.

81.     YETI's Trademarks are famous and are entitled to protection under the Lanham Act.   YETI's Trademarks have acquired distinctiveness through YETI's extensive and continuous promotion and use of YETI's Trademarks in the United States.   Through that extensive and continuous use, YETI's Trademarks have become famous well-known indicators of the origin and quality of YETI's products throughout the United States, and are widely recognized by the general consuming public as a designation of the source of YETI and YETI's products.   YETI's Trademarks have also acquired substantial secondary meaning in the marketplace.   Moreover, YETI's Trademarks became famous and acquired this secondary meaning before Wal-Mart commenced their unlawful use of YETI's Trademarks in connection with the Accused Products and infringing products.

82.     Wal-Mart's use of YETI's Trademarks, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's Trademarks, YETI's products, and YETI.

83.     On information and belief, Wal-Mart's use of YETI's Trademarks, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, has been

32

intentional, willful, and malicious.  Wal-Mart's bad faith is evidenced at least by Wal-Mart's unlawful use of YETI's Trademarks to sell the Accused Products and infringing products and by Wal-Mart's continuing disregard for YETI's rights.

84.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Wal-Mart's profits, YETI's actual damages, enhanced profits and damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(c), 1116, and 1117.

**Count VIII:**
**Trade Dress Dilution Under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)**

85.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 84 as though fully set forth herein.

86.     Based on the activities described above, including, for example, Wal-Mart's advertising, marketing, promoting, offering for sale, selling, distributing, manufacturing, and/or importing the Accused Products and infringing products, Wal-Mart is likely to dilute has diluted, and continue to dilute YETI's famous trade dress in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).  Wal-Mart's use of YETI's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, is likely to cause, and has caused, dilution of YETI's famous trade dress, at least by eroding the public's exclusive identification of YETI's famous trade dress with YETI and YETI's products, by lessening the capacity of YETI's famous trade dress to identify and distinguish YETI's products, by associating YETI's Trade Dress with products of inferior quality, and by impairing the distinctiveness of YETI's famous trade dress

87.     YETI's Trade Dress is famous and is entitled to protection under the Lanham Act. YETI's Trade Dress includes unique, distinctive, and non-functional designs.  YETI's Trade Dress has acquired distinctiveness through YETI's extensive and continuous promotion and use

of YETI's Trade Dress in the United States.  Through that extensive and continuous use, YETI's Trade Dress has become a famous well-known indicator of the origin and quality of YETI's products throughout the United States, and is widely recognized by the general consuming public as a designation of the source of YETI and YETI's products.  YETI's Trade Dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's Trade Dress became famous and acquired this secondary meaning before Wal-Mart commenced its unlawful use of YETI's Trade Dress in connection with the Accused Products and infringing products.

88.    Wal-Mart's use of YETI's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's Trade Dress, with YETI, and YETI's drinkware products.

89.    On information and belief, Wal-Mart's use of YETI's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, has been intentional, willful, and malicious.  Wal-Mart's bad faith is evidenced at least by the similarity of the Accused Products and infringing products to YETI's Trade Dress, as demonstrated in, for example, Illustrations 1-3 and Illustrations 10-19 above, and by Wal-Mart's continuing disregard for YETI's rights.

90.    YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Wal-Mart's profits, actual damages, enhanced profits and damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(c), 1116, and 1117.

**Count IX:**
**Unfair Competition and False Designation of Origin Under § 43(a)**
**of the Lanham Act, 15 U.S.C. § 1125(a)**

91.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 90 as though fully set forth herein.

92.     Wal-Mart's advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Accused Products and infringing products, in direct competition with YETI, violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and constitute unfair competition, false advertising, and false designation of origin, at least because Wal-Mart has obtained an unfair advantage as compared to YETI through Wal-Mart's use of YETI's Trademarks and YETI's Trade Dress and because such uses are likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of Wal-Mart's Accused Products and infringing products, at least by creating the false and misleading impression that the Accused Products and infringing products are manufactured by, authorized by, or otherwise associated with YETI.

93.     YETI's Trademarks and YETI's Trade Dress are entitled to protection under the Lanham Act.  YETI's Trade Dress includes unique, distinctive, and non-functional designs. YETI has extensively and continuously promoted and used its trademarks and trade dress in the United States.  Through that extensive and continuous use, YETI's Trademarks and YETI's Trade Dress have become well-known indicators of the origin and quality of YETI's products. YETI's Trademarks and YETI's Trade Dress have also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's Trademarks and YETI's Trade Dress acquired this secondary meaning before Wal-Mart commenced its unlawful use of YETI's Trademarks and YETI's Trade Dress in connection with the Accused Products and infringing products.

35

94.     Wal-Mart's use of YETI's Trademarks and YETI's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's Trademarks and YETI's Trade Dress, with YETI, and YETI's drinkware products.

95.     On information and belief, Wal-Mart's use of YETI's Trademarks and YETI's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, has been intentional, willful, and malicious.  Wal-Mart's bad faith is evidenced at least by the similarity of the Accused Products and infringing products to YETI's Trademarks and YETI's Trade Dress, as demonstrated in, for example, Illustrations 1-3 and Illustrations 10-19 above, and by Wal-Mart's continuing disregard for YETI's rights.

96.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Wal-Mart's profits, YETI's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

**Count X**
**Copyright Infringement Under 17 U.S.C. § 501**

97.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 96 as though fully set forth herein.

98.     Based on the activities described above, including, for example, copying, reproducing, making, displaying, distributing, using, and/or preparing derivative works of YETI's Copyrights—and doing so to help advertise, promote, offer for sale, sell, distribute, manufacture, and/or import its infringing products—Wal-Mart has infringed YETI's Copyrights in violation of at least 17 U.S.C. § 501.

36

99.     Wal-Mart's acts of infringement are willful. Wal-Mart's bad faith is evidenced at least by Wal-Mart's direct copying of YETI's Copyrights, and Wal-Mart then using these copies to, *inter alia*, advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import Wal-Mart's drinkware. Wal-Mart's bad faith is further evidenced by Wal-Mart's infringement of YETI's other rights, and Wal-Mart's continuing disregard for YETI's rights.

100.    Each infringement by Wal-Mart of YETI's Copyrights constitutes a separate and distinct act of infringement.

101.    Wal-Mart's infringement of YETI's Copyrights has caused irreparable injury to YETI.

102.    YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's actual damages and/or Wal-Mart's profits under 17 U.S.C. § 504(b), or in the alternative statutory damages under 17 U.S.C. § 504(c), and costs at least under 17 U.S.C. § 505.

### Count XI:
### Patent Infringement Under 35 U.S.C. § 271

103.    YETI realleges and incorporates the allegations set forth in paragraphs 1 through 102 as though fully set forth herein.

104.    Wal-Mart has infringed and upon information and belief will continue to infringe the '397 patent at least by using, selling, and offering to sell, making and/or importing the Wal-Mart "Koozie" beverage holders, which are covered by the claim of the '397 patent.

105.    Wal-Mart's acts of infringement have been without express or implied license by YETI, are in violation of YETI's rights, and will continue unless enjoined by this Court.

106.    On information and belief, Wal-Mart's infringement has been, and continues to be, deliberate, intentional, and willful.

107.    On information and belief, this is an exceptional case in view of, *inter alia*, Wal-Mart's unlawful activities, including Wal-Mart's deliberate, intentional and willful infringement.

108.    YETI has been, is being, and will continue to be injured and has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief at least under at least 35 U.S.C. §§ 281, 284, 285, and 289.

109.    Wal-Mart also has caused, is causing, and will continue to cause irreparable harm to YETI for which there is no adequate remedy at law and for which YETI is entitled to injunctive relief under at least 35 U.S.C. § 283.

## Count XII
## Common Law Trademark Infringement

110.    YETI realleges and incorporates the allegations set forth in paragraphs 1 through 109 as though fully set forth herein.

111.    Wal-Mart's activities described above, including, for example, Wal-Mart's use of YETI's Trademarks, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, in direct competition with YETI, constitute common law trademark infringement, at least because Wal-Mart's use of YETI's Trademarks including through counterfeits, reproductions, copies, and/or colorable imitations thereof is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of the Accused Products and infringing products, at least by creating the false and misleading impression that the Accused Products and infringing products are manufactured by, authorized by, or otherwise associated with YETI.

112.    YETI's Trademarks are entitled to protection under the common law. YETI has extensively and continuously promoted and used its trademarks in the United States and the State of Texas.  Through that extensive and continuous use, YETI's Trademarks have become well-

known indicators of the origin and quality of YETI's products.  YETI's Trademarks have also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's Trademarks acquired this secondary meaning before Wal-Mart commenced their unlawful use of YETI's Trademarks in connection with the Accused Products and infringing products.

113.   Wal-Mart's use of YETI's Trademarks, including through counterfeits, reproductions, copies, and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's Trademarks, YETI's products, and YETI.

114.   On information and belief, Wal-Mart's use of YETI's Trademarks, including through counterfeits, reproductions, copies, and/or colorable imitations thereof has been intentional, willful, and malicious.  Wal-Mart's bad faith is evidenced at least by Wal-Mart's unlawful use of YETI's Trademarks to sell the Accused Products and infringing products and by Wal-Mart's continuing disregard for YETI's rights.

115.   YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, Wal-Mart's profits, punitive damages, costs, and reasonable attorney fees.

### Count XIII:
### Common Law Trade Dress Infringement

116.   YETI realleges and incorporates the allegations set forth in paragraphs 1 through 115 as though fully set forth herein.

117.   Wal-Mart's advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Accused Products and infringing products, in direct competition with YETI, constitute common law trade dress infringement, at least because Wal-Mart's use of YETI's Trade Dress, including through counterfeits, reproductions, copies,

and/or colorable imitations thereof, is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of the Accused Products and infringing products, at least by creating the false and misleading impression that the Accused Products and infringing products are manufactured by, authorized by, or otherwise associated with YETI.

118.    YETI's Trade Dress is entitled to protection under the common law.  YETI's Trade Dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used its Trade Dress in the United States and the State of Texas. Through that extensive and continuous use, YETI's Trade Dress has become well-known indicators of the origin and quality of YETI's products.  YETI's Trade Dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's Trade Dress acquired this secondary meaning before Wal-Mart commenced its unlawful use of YETI's Trade Dress in connection with the Accused Products and infringing products.

119.    Wal-Mart's use of YETI's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's Trade Dress, with YETI, and YETI's drinkware products.

120.    On information and belief, Wal-Mart's use of YETI's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof has been intentional, willful, and malicious.  Wal-Mart's bad faith is evidenced at least by the similarity of the Accused Products and infringing products to YETI's Trade Dress, as demonstrated in, for example, Illustrations 1-3 and Illustrations 10-19 above, and by Wal-Mart's continuing disregard for YETI's rights.

121.    YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, Wal-Mart's profits, punitive damages, costs, and reasonable attorney fees.

**Count XIV:**
**Common Law Unfair Competition**

122.    YETI realleges and incorporates the allegations set forth in paragraphs 1 through 121 as though fully set forth herein.

123.    Wal-Mart's advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Accused Products and infringing products, in direct competition with YETI, constitute common law unfair competition, at least by palming off/passing off of Wal-Mart's goods, by simulating YETI's Trademarks and YETI's Trade Dress in an intentional and calculated manner that is likely to cause consumer confusion as to origin and/or sponsorship/affiliation of the Accused Products and infringing products, at least by creating the false and misleading impression that the Accused Products and infringing products are manufactured by, authorized by, or otherwise associated with YETI.  Wal-Mart has also interfered with YETI's business.

124.    YETI's Trademark and Trade Dress are entitled to protection under the common law.  YETI's Trade Dress includes unique, distinctive, and non-functional designs.  YETI's Trademarks are inherently distinctive.  YETI has extensively and continuously promoted and used YETI's Trademarks and YETI's Trade Dress for years in the United States and the State of Texas.  Through that extensive and continuous use, YETI's Trademarks and YETI's Trade Dress have become well-known indicators of the origin and quality of YETI's products.  YETI's Trademarks and YETI's Trade Dress have also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's Trademarks and YETI's Trade Dress acquired this secondary

meaning before Wal-Mart commenced its unlawful use of YETI's Trademarks and YETI's Trade Dress in connection with the Accused Products and infringing products.

125.    On information and belief, Wal-Mart's use of YETI's Trademark and YETI's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's Trademarks, YETI's Trade Dress, with YETI, and YETI's drinkware products.

126.    On information and belief, Wal-Mart's use of YETI's Trademarks and YETI's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, has been intentional, willful, and malicious.  Wal-Mart's bad faith is evidenced at least by the similarity of the Accused Products and infringing products to YETI's Trademarks and YETI's Trade Dress, as demonstrated in, for example, Illustrations 1-3 and Illustrations 10-19 above, and by Wal-Mart's continuing disregard for YETI's rights.

127.    YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, Wal-Mart's profits, punitive damages, costs, and reasonable attorney fees.

## Count XV:
## Common Law Misappropriation

128.    YETI realleges and incorporates the allegations set forth in paragraphs 1 through 127 as though fully set forth herein.

129.    Wal-Mart's advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Accused Products and infringing products, in direct competition with YETI, constitute common law misappropriation.

130.    YETI created the products covered by YETI's Trademarks and YETI's Trade Dress through extensive time, labor, effort, skill, and money.  Wal-Mart has wrongfully used YETI's Trademarks and YETI's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, in competition with YETI and gained a special advantage because Wal-Mart was not burdened with the expenses incurred by YETI.  Wal-Mart has commercially damaged YETI, at least by causing consumer confusion as to origin and/or sponsorship/affiliation of the Accused Products and infringing products, by creating the false and misleading impression that the Accused Products and infringing products are manufactured by, authorized by, or otherwise associated with YETI, and by taking away sales that YETI would have made.

131.    YETI's Trademarks and YETI's Trade Dress are entitled to protection under the common law.  YETI's Trade Dress include unique, distinctive, and non-functional designs. YETI has extensively and continuously promoted and used YETI's Trademarks and YETI's Trade Dress for years in the United States and the State of Texas.  Through that extensive and continuous use, YETI's Trademarks and YETI's Trade Dress have become a well-known indicator of the origin and quality of YETI's insulated drinkware products.  YETI's Trademarks and YETI's Trade Dress have also acquired substantial secondary meaning in the marketplace. Moreover, YETI's Trademarks and YETI's Trade Dress acquired this secondary meaning before Wal-Mart commenced its unlawful use of YETI's Trademarks and YETI's Trade Dress in connection with the Accused Products and infringing products.

132.    Wal-Mart's use of YETI's Trademarks and YETI's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to YETI for

which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's Trademarks and YETI's Trade Dress with YETI and YETI's products.  Moreover, as a result of its misappropriation, Wal-Mart has profited and, unless such conduct is enjoined by this Court, will continue to profit by misappropriating the time, effort, and money that YETI invested in establishing the reputation and goodwill associated with YETI'S Trademarks and YETI's Trade Dress with YETI and YETI's products.

133.    On information and belief, Wal-Mart's misappropriation of YETI's Trademarks and YETI's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, has been intentional, willful, and malicious.   Wal-Mart's bad faith is evidenced at least by the similarity of the Accused Products and infringing products to YETI's Trademarks and YETI's Trade Dress, as demonstrated in, for example, Illustrations 1-3 and Illustrations 10-19 above, and by Wal-Mart's continuing disregard for YETI's rights.

134.    YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, Wal-Mart's profits, punitive damages, costs, and reasonable attorney fees.

### Count XVI:
### Unjust Enrichment

135.    YETI realleges and incorporates the allegations set forth in paragraphs 1 through 134 as though fully set forth herein.

136.    Wal-Mart's advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Accused Products and infringing products, in direct competition with YETI, constitute unjust enrichment, at least because Wal-Mart has wrongfully obtained benefits at YETI's expense.  Wal-Mart has also, *inter alia*, operated with an undue advantage.

137.   YETI created the products covered by YETI's Trademarks and YETI's Trade Dress through extensive time, labor, effort, skill, and money.  Wal-Mart has wrongfully used and is wrongfully using YETI's Trademarks and YETI's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, in competition with YETI, and has gained and is gaining a wrongful benefit by undue advantage through such use.  Wal-Mart has not been burdened with the expenses incurred by YETI, yet Wal-Mart is obtaining the resulting benefits for its own business and products.

138.   YETI's Trademarks and YETI's Trade Dress are entitled to protection under the common law.  YETI's Trade Dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used YETI's Trademarks and YETI's Trade Dress for years in the United States and the State of Texas.  Through that extensive and continuous use, YETI's Trademarks and YETI's Trade Dress have become well-known indicators of the origin and quality of YETI's insulated drinkware products.  YETI's Trademarks and YETI's Trade Dress have also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's Trademarks and YETI's Trade Dress acquired this secondary meaning before Wal-Mart commenced its unlawful use of YETI's Trademarks and YETI's Trade Dress and colorable imitations thereof in connection with the Accused Products and infringing products.

139.   Wal-Mart's use of YETI's Trademarks and YETI's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's Trademarks and YETI's Trade Dress with YETI and YETI's products.  YETI accumulated this goodwill and reputation through

extensive time, labor, effort, skill, and investment.  Wal-Mart has wrongfully obtained and is wrongfully obtaining a benefit at YETI's expense by taking undue advantage and free-riding on YETI's efforts and investments, and enjoying the benefits of YETI's hard-earned goodwill and reputation.

140.    On information and belief, Wal-Mart's unjust enrichment at YETI's expense has been intentional, willful, and malicious.  Wal-Mart's bad faith is evidenced at least by the similarity of the Accused Products and infringing products to YETI's Trademarks and YETI's Trade Dress, as demonstrated in, for example, Illustrations 1-3 and Illustrations 10-19 above, and by Wal-Mart's continuing disregard for YETI's rights.

141.    YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Wal-Mart's profits.

## Demand for Jury Trial

142.    YETI hereby demands a jury trial on all issues so triable.

## Relief Sought

WHEREFORE, Plaintiff respectfully prays for:

1.    A judgment that Wal-Mart has breached the Settlement Agreement and is liable to YETI for breach of contract;

2.    An award of damages adequate to compensate YETI for Wal-Mart's breach of the Settlement Agreement;

3.    An Order permanently enjoining Wal-Mart, its officers, directors, agents, servants, employees, attorneys, and all others in active concert or participation with Wal-Mart, directly or indirectly, from continued breach of the Settlement Agreement;

4.      An award to YETI of its reasonable attorneys' fees incurred with respect to enforcement of the Settlement Agreement;

5.      Judgment that Wal-Mart has (i) diluted YETI's Trademarks and YETI's Trade Dress in violation of Tex. Bus. & Com. Code § 16.103; (ii) infringed YETI's Trademarks in violation of § 1114(1) of Title 15 in the United States Code; (iii) infringed YETI's Trademarks and Trade Dress in violation of § 1125(a) of Title 15 in the United States Code; (iv) diluted YETI's Trademarks and YETI's Trade Dress in violation of § 1125(c) of Title 15 in the United States Code; (v) engaged in unfair competition and false designation of origin in violation of § 1125(a) of Title 15 in the United States Code; (vi) YETI's Copyrights in violation of § 501 of Title 17 in the United States Code; (vii) infringed the '397 patent in violation of § 271 of Title 35 in the United States Code; (viii) violated YETI's common law rights in YETI's Trademarks and YETI's Trade Dress; (ix) engaged in common law unfair competition; (x) engaged in common law misappropriation; and (xi) been unjustly enriched at YETI's expense, and that these wrongful activities by Wal-Mart were willful;

6.      An injunction against further infringement and dilution of YETI's Trademarks, further infringement and dilution of YETI's Trade Dress, further infringement of the '397 patent, further acts of unfair competition, misappropriation, unjust enrichment, further infringement of YETI's Copyrights by Wal-Mart, and each of its agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert with any of them, including at least from selling, offering to sell, distributing, importing, or advertising the Accused Products and infringing products, or any other products that use a copy, reproduction, or colorable imitation of the '397 patent, YETI's Trademarks, YETI's   Trade Dress, and/or YETI's

Copyrights, pursuant to at least 15 U.S.C. § 1116, 17 U.S.C. § 502, 35 U.S.C. § 283, and Tex. Bus. & Com. Code § 16.104;

7.      An Order that Wal-Mart pay YETI for all profits and damages resulting from Wal-Mart's infringing activities and that the award to YETI be trebled, as provided for under 15 U.S.C. § 1117, or, at YETI's election, that YETI be awarded statutory damages from Wal-Mart in the amount of $2,000,000.00 per counterfeit mark per type of goods sold, as provided by at least 15 U.S.C. § 1117(c);

8.      An Order directing Wal-Mart to recall all Accused Products and infringing products sold and/or distributed and provide a full refund for all recalled Accused Products and infringing products;

9.      An Order directing the destruction of (i) all Accused Products and infringing products, including all recalled Accused Products and infringing products, (ii) any other products that use a copy, reproduction, or colorable imitation of YETI's Trademarks or YETI's Trade Dress in Wal-Mart's possession or control, (iii) all plates, molds, and other means of making the Accused Products and infringing products in Wal-Mart's possession, custody, or control, and (iv) all advertising materials related to the Accused Products and infringing products in Wal-Mart's possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

10.     An Order directing Wal-Mart to publish a public notice providing proper attribution of YETI's Trademarks, YETI's Trade Dress, and YETI's Copyrights to YETI, and to provide a copy of this notice to all customers, distributors, and/or others from whom the Accused Products and infringing products are recalled;

11.     An Order barring importation of the Accused Products and infringing products and/or colorable imitations thereof into the United States, and barring entry of the Accused

Products and infringing products and/or colorable imitations thereof into any customhouse of the United States, pursuant to at least 15 U.S.C. § 1125(b);

12.     An award of Wal-Mart's profits, YETI's actual damages, enhanced damages, exemplary damages, costs, prejudgment and post judgment interest, and reasonable attorney fees pursuant to at least 15 U.S.C. §§ 1114(1), 1125(a), 11125(c), 1116, and 1117, Texas common law, and Tex. Bus. & Com. Code § 16.104;

13.     An award of YETI's actual damages and/or Wal-Mart's profits, or in the alternative statutory damages under, and costs pursuant to 17 U.S.C. §§ 504(b, c) and 505;

14.     An award of damages to compensate YETI for the patent infringements that have occurred pursuant to 35 U.S.C. § 284, or an award of Wal-Mart's profits from their patent infringements pursuant to 35 U.S.C. § 289, together with prejudgment interest and costs and reasonable attorney fees, pursuant to 35 U.S.C. §§ 284 and 285; and

15.     Such other and further relief as this Court deems just and proper.


Dated:  December 8, 2017                    Respectfully submitted,



                                            By:___/s/ Joseph J. Berghammer_____
                                            Joseph R. Knight
                                            Texas Bar No. 11601275
                                            jknight@ebbklaw.com
                                            Ewell, Brown, Blanke, & Knight LLP
                                            111 Congress Avenue
                                            Suite 2800
                                            Austin, Texas 78701
                                            Telephone: (512) 770-4010
                                            Facsimile: (512) 684-7681

                                            Joseph J. Berghammer (admitted in the Western
                                            District of Texas)
                                            Illinois Bar No. 6273690

jberghammer@bannerwitcoff.com
Marc S. Cooperman (admitted in the Western
District of Texas)
Illinois Bar No. 6201035
mcooperman@bannerwitcoff.com
Kevin Dam (*pro hac vice forthcoming*)
Illinois Bar No. 6326791
kdam@bannerwitcoff.com
Banner & Witcoff, Ltd.
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606-7407
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

**ATTORNEYS FOR YETI COOLERS, LLC**